AICARDI ET ALS. *vs.* CRAIG.

[BILL OF INJUNCTION—LIEN.]

1. *On transitory seizin in trust; no lien attaches.*—D. became the purchaser of certain real estate at public sale, as highest bidder, but paid

no part of the purchase-money ; by agreement with A. he re-sold the same property to A. at an advance ; at this time C. held a judgment against D. The payment of the purchase-money by A. to D. on his purchase, and of D. to C., as agent of the vendor, on the first purchase, was one transaction ; the monies being paid, and the several deeds duly executed and delivered at the same time, and it being understood that A. paid the money to D. to enable him to pay his vendor, so as to obtain a title, by which he would be enabled immediately to convey title to A.,—*held*, that under such a state of the case, a court of equity must regard the transitory seizin of D. as being in trust for A., and that the prior equity of A. prevented the lien of the judgment against D. from attaching to the land.

APPEAL from Dallas Chancery Court.
Heard before the Hon. JNO. Q. LOOMIS.

THIS was a bill in chancery filed by Antonio Aicardi and others, against Benjamin H. Craig, to enjoin the said defendant from selling a certain house and lot in the town of Cahaba, under a judgment and execution which he held against one J. S. Diggs, as the property of said Diggs, and in virtue of the lien created by said judgment. The facts upon which the decision rests, are fully stated in the opinion of the court, and need not be here repeated. The chancellor dismissed the bill, and complainants appealed.

FELLOWS & JOHN, for appellants.
WHITE & CRAIG, *contra.*

JUDGE, J.—The following, among other facts, are substanlially established by the evidence :

The executors of Alanson Saltmarsh, deceased, sold, under a mortgage to their testator, a house and lot situate in the town of Cahaba. J. Shepherd Diggs became the purchaser at said sale. Before paying the purchase-money for, or receiving a deed to the premises, Diggs made a verbal agreement with appellant, Aicardi, to sell and convey the premises to him, at an advanced price ; and by the terms of this agreement, Aicardi was to receive a good title to the premises on the payment of the purchase-money by him to Diggs. A deed conveying the premises to Diggs, was prepared by the executors of Saltmarsh, and entrusted

to Craig, the appellee, as their agent, for delivering to Diggs, on the payment by the latter to Craig, of the purchase-money due to them on account of the purchase of Diggs. Aicardi and Diggs, and Craig, as the agents of the executors, all met together to consummate their respective contracts. Pursuant to a previous understanding with Diggs, Aicardi then paid to him the full amount of the purchase-money for the premises, according to their agreement; Diggs then immediately counted out from the sum thus paid to him, the amount of the purchase-money for the premises, due by him to the executors of Saltmarsh, and paid it to the appellee as their agent; appellee thereupon immediately delivered to Diggs the conveyance from the executors to him; and Diggs, thereupon, immediately delivered to Aicardi, (the same having been previously prepared for the purpose,) a conveyance of the premises from himself to Aicardi.

Appellee had at the time, a subsisting judgment in his favor against Diggs, which had been recovered in the circuit court of Dallas county, and which was a general statutory lien upon all the property of the latter, in the State. Appellee, though present, and witnessing the delivery of the deed from Diggs to Aicardi, remained *silent* as to the existence of his judgment against the former; but nothing was said or done by him in relation to the trade between Aicardi and Diggs, in which transaction he had no participation whatever.

The principal question for our consideration is, whether, under the circumstances, the lien of the appellee's judgment attached to the premises during the seizin of Diggs?

The payment of the purchase-money by Aicardi to Diggs was prior in point of time to the acquisition of the title by Diggs; and the payment was made with the distinct understanding between Aicardi and Diggs, that it was for the purpose of enabling the latter to procure the title for immediate transmission to the former. Under these circumstances, a court of equity must regard the transitory seizin of Diggs, as being in trust of Aicardi, and that the prior equity of Aicardi prevented the lien of the judgment from

20

attaching to the land. Diggs had no beneficial interest in the land during his instantaneous seizin, he having previously converted his entire interest therein into money, and whether at a profit or not, is immaterial. But whether such would be the rule in a court of law, we need not determine.—*Sellers & Cook v. Hayes*, 17 Ala. 749.

The ruling in equity is, that from the time of a sale of land, "the vendor becomes a trustee of the title for the vendee, as the latter is a trustee of the purchase-money for the former. In each instance, a lien is created upon the estate for the money. This lien will prevail against a judgment creditor of the vendor intervening between the time of the agreement to convey and receipt of the consideration money, and the actual conveyance."—*Mooney v. Dorsey et al.*, 7 Sm. & Mar. 15, and authorities there cited. See, also, 4 Kent's Com. 152; *Moyer v. Hinman*, 3 Kernan, 180; *Scott v. Warren*, 21 Geo. 408; *Louisburg v. Purdy*, 11 Barb. Sup. Ct. 490; *Hay v. Taliaferro*, 8 Sm. & Mar. 727; *Eslava v. Lepretre*, 21 Ala. 573; *Gully v. Ray*, 18 B. Monroe, 107.

But it is contended that the contract between Aicardi and Diggs, for the sale of the premises by the latter to the former, was void under the statute of frauds, and that consequently, Aicardi could acquire no equity under it.

The enforcement of a contract not made in conformity to the requirements of the statute of frauds, may be prevented; but there is nothing in the statute to prevent the *voluntary* execution of such a contract, nor to annul it when executed.—*Sawyer v. Ware*, 36 Ala. 675, and authorities there cited. It results that this position of appellee is untenable.

It is the right of a party to go into equity, to remove a cloud which hangs over his title, either by an actual or threatened sale of the land to another.—*Burt v. Cassety*, 12 Ala. 734.

The bill in the present case would have equity for this purpose, even if, under the circumstances, no title to the land would pass by a sale under the judgment.

It is unnecessary to consider any other question presented by the record.

The decree of the chancellor must be reversed, and a

decree here entered perpetually enjoining the appellee from levying his judgments upon the lands in the pleadings mentioned.

Appellee must pay the costs of the court below and of this court.